2006 WL 3814311
Only the Westlaw citation is currently available.
United States District Court,
M.D. Pennsylvania.

John A. KEGOLIS, Plaintiff,
v.
BOROUGH OF SHENANDOAH, PENNSYLVANIA, et al., Defendants.

No. 3:03-CV-0602.
|
Dec. 27, 2006.

**Attorneys and Law Firms**

John A. Kegolis, Shenandoah, PA, pro se.

Frank J. Lavery, Jr., Lavery, Faherty, Young & Patterson, P.C., Harrisburg, PA, for Defendants.

### MEMORANDUM

A. RICHARD CAPUTO, United States District Judge.

*1 Presently before the Court is the motion for summary judgment of Defendants Borough of Shenandoah, Joseph Palubinsky, John P. Thomas, the Borough Council of Shenandoah, and Joseph B. Lawson (hereinafter collectively referred to as the "Borough Defendants"). (Doc. 40-1 .) For the reasons set forth below, Borough Defendants' motion for summary judgment will be granted.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 [1] ("federal question jurisdiction"), 28 U.S.C. § 1343(a) [2] ("civil rights and elective franchise"), and 28 U.S.C. § 1367(a) ("district courts shall have supplemental jurisdiction over all other claims that are so related to [federal] claims that they form part of the same case or controversy").

### BACKGROUND

Plaintiff John A. Kegolis was hired as a police officer with Defendant Borough of Shenandoah ("the Borough") in August of 1993. (Doc. 41 ¶ 2.) On or about February 9, 1999, Plaintiff was in pursuit of a fugitive when he slipped on a patch of ice and fell, striking his neck. (Doc. 1 ¶ 15; Doc. 41 ¶ 3.) As a result of this impact, Plaintiff suffered injuries to his cervical spinal column in the region of C5-C7. (*Id.*) Plaintiff continued to perform his regular duties as a Borough police officer until May 27, 1999, when he was restricted to sedentary duty by Myron D. Haas, D.O., Plaintiff's treating physician. (Doc. 1 ¶ 17; Doc. 42-2 p. 35; Kegolis Dep. 29:4-22 March 14, 2005.)

On August 30, 1999, Robert T. O'Leary, D.O., performed an Independent Medical Evaluation (IME) on Plaintiff. (Doc. 1 ¶ 18). Dr. O'Leary's report stated the following: (1) that Plaintiff was not a surgical candidate; (2) that Mr. Kegolis was not incapable at that time of performing activities of daily living; (3) he should be limited at that time to "light-medium type duty work," (4) Plaintiff had a disc herniation at the C6-C7 level, with radiculitis; and finally, (5) "most of [Mr. Kegolis'] right upper extremity radiculitis symptoms will improve, but I do not know if the C6-C7 disc will ever be perfect." (Doc. 42-2 pp. 42-43.) Dr. O'Leary re-evaluated Plaintiff on April 17, 2000 and concluded that Mr. Kegolis' injury and impairment are permanent in nature. He stated in a letter dated June 1, 2000 and addressed to former Defendant Hoover Rehabilitation Services, Inc. that "[b]ased on his limitations, I do not believe he is capable of performing the duties of a police officer for the Borough ... as I understand them." (Doc. 42-3 p. 2.) Plaintiff was not given a copy of Dr. O'Leary's medical report, nor was he made aware at that time by the Borough that Dr. O'Leary found his work restrictions-to "light or medium duty"-to be permanent. (Doc. 40-1 ¶¶ 23-24.)

Plaintiff began to receive benefits under Workers' Compensation and the Pennsylvania Heart and Lung Act in mid-June of 1999. (Doc 42-2 p. 37; Kegolis Dep. 30:1-17). Plaintiff would sign over his bi-weekly Workers' Compensation check to the Borough, and would receive a Heart and Lung benefit check from the Borough in the full amount of his salary. (Kegolis Dep. 32:23-25, 33:1-15.) According to Borough Defendants, due to concerns over the fiscal viability of the Borough's pension plan, the Borough Council decided to explore the creation of a light- to medium-duty police position

consistent with the restrictions placed on Plaintiff by Dr. O'Leary. The Borough understood that Plaintiff's Heart and Lung Act benefits would be terminated upon Plaintiff's return to work in a light or medium duty position within his medical restrictions. No light-to medium-duty position was ever created, nor, according to Plaintiff, was the possibility of such a position being created ever discussed with him. (Doc. 59 ¶ 25.) Plaintiff received benefits under the Heart and Lung Act from mid-June of 1999 until April of 2001, when he was suspended from employment with the Borough. (Doc. 42-6 ¶ 4 .) Plaintiff then received Workers' Compensation benefits until a lump-sum Compromise and Release Agreement was approved-with a final settlement amount of $75,000.00-on August 27, 2001. (Doc. 42-5 pp 16-22; Doc. 42-6 ¶ 4.)

**\*2** While he was working as a police officer, Mr. **Kegolis** operated a business by the name of The **Kegolis** Insurance Agency. (Doc. 42-6 ¶ 9.) In March of 2001, the Pennsylvania State Police filed three separate criminal complaints against Plaintiff for not properly and timely forwarding money to the Pennsylvania Department of Transportation ("PennDOT") in connection with vehicle title transfers that he had processed. (Doc. 42-6 ¶¶ 10-11.) In May of 2001, after Plaintiff's suspension was effective, the Pennsylvania State Police filed four more criminal charges against Plaintiff for the same alleged unlawful conduct. (Doc. 42-6 ¶ 18.)

By letter of April 4, 2001, Plaintiff was notified by Borough Mayor-Defendant John P. Thomas that he had been suspended without pay as a member of the Shenandoah Police Department, effective March 26, 2001, due to Plaintiff having been charged with various offenses pursuant to 18 P.S. § 3927 pertaining to 'Theft by Failure to Make Required Disposition of Funds Received'. (Doc. 42-3 p. 12.) Defendant Thomas' letter stated that Plaintiff's suspension was effective until the date of the next Borough Council meeting, April 23, 2001, but at that time Mr. Thomas would request that the Council extend Plaintiff's suspension. (*Id.*) At this meeting, the Borough Council did indeed decide to extend Plaintiff's suspension, for a period of one year from that date. Plaintiff was notified of this action by the Borough via letter dated April 30, 2001 and signed by Council President-Defendant Joseph B. Lawson. (Doc. 42-3 p. 15.) Thereafter, Plaintiff mailed a letter to Borough Manager-Defendant Joseph Palubinsky requesting that he be retired under the Police Disability Pension program. (Doc. 42-3 p. 18.) Prior to the time of his initial suspension, Plaintiff had never requested either retirement or a disability pension. (Doc. 42-6 ¶ 15.)

Plaintiff was not completely exonerated of these criminal charges[3], and consequently the Borough decided to terminate his employment as a police officer at a Borough Council meeting on April 18, 2002. (Doc. 42-6 ¶ 26.) Plaintiff was advised of his termination by correspondence dated April 23, 2002. (Doc. 42-6 ¶ 26.) Plaintiff was thereafter notified that because he was terminated for misconduct and, therefore, did not receive an honorable discharge, he was not eligible to receive a disability pension. (Doc. 42-5 p. 37; Doc. 42-6 ¶ 27.)

Plaintiff then filed a grievance challenging his termination. A grievance hearing was held by an impartial arbitrator, Joseph Bloom, on September 26, 2003. Thereafter the arbitrator issued an opinion and award dated April 3, 2004, denying Plaintiff's grievance and sustaining his termination. Specifically, Mr. Bloom noted that the Borough had met the just cause standard for termination and that the discharge of Mr. **Kegolis** was affirmed. (Doc. 42-6 pp. 17-36; Doc. 42-6 ¶ 28.)

On April 8, 2003, Plaintiff filed a Complaint against the Borough Defendants-and other parties which have since been terminated from the case-alleging that these Defendants deprived him of his property rights in pension and retirement benefits in violation of 42 U.S.C. § 1983, the Pennsylvania Heart and Lung Act[4], and the Borough Code of the Commonwealth of Pennsylvania. (Doc. 1.) Defendant Inservco Insurance Services, Inc. ("Inservco") filed a motion to dismiss on July 31, 2003 (Doc. 6), and this motion was granted by the Court pursuant to the order of August 24, 2004. (Doc. 31.) Defendant Hoover Rehabilitation Services, Inc. ("Hoover") filed a motion to dismiss on September 4, 2003 (Doc. 16), and this motion was granted by the Court pursuant to the order of August 26, 2004. (Doc. 32.) These two defendants were thereafter dismissed from the case.

**\*3** Furthermore, this Court held in the above-mentioned orders granting the motions to dismiss that a pension benefit, whether vested or unvested, does not constitute property entitled to substantive due process protection in the Third Circuit. Therefore, Plaintiff's substantive due process claim under § 1983 was dismissed, and the procedural due process claim was the only federal cause of action to survive said orders. (Doc. 31 p. 9.; Doc. 32 p. 9.)

On August 28, 2003, the Borough Defendants filed a motion to dismiss (Doc. 15), and this motion was denied by the Court pursuant to the order of October 4, 2004. (Doc. 33.) On July 1, 2005, the Borough Defendants filed the present motion for summary judgment pursuant to Fed.R.Civ.P. 56. (Doc. 40-1.)[5]

This motion is fully briefed and ripe for disposition.

**LEGAL STANDARD**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *See id.* at 248. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id.*

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* Charles Alan Wright & Arthur R. Miller, Federal Practice And Procedure: Civil 2D § 2727 (2d ed.1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case...." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *See White v. Westinghouse Elec. Co.,* 862 F.2d 56, 59 (3d Cir.1988). Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *See Liberty Lobby,* 477 U.S. at 256-57.

*\*4* The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby,* 477 U.S. at 249.

**DISCUSSION**

Plaintiff's Complaint alleges that the Borough Defendants acted in concert to deprive Plaintiff of his constitutionally protected property rights to a pension and retirement benefits because they failed to furnish him with a copy of Dr. O'Leary's medical report of June 1, 2000, which opined that Plaintiff's work restrictions were permanent, and that this non-disclosure ultimately led to Plaintiff's disqualification from receipt of said benefits. Plaintiff alleges that Borough Defendants' actions were in violation of the Pennsylvania Heart and Lung Act and the Pennsylvania Borough Code, and brings suit in this Court pursuant to the due process clause of the Fourteenth Amendment to the United States Constitution via 42 U.S.C. § 1983. After reviewing the pertinent record, the Court finds that no genuine issue exists as to any fact material to the disposition of the present motion. Further, the Court finds that the Borough Defendants' failure to notify Plaintiff of his permanent work restrictions upon the receipt of the IME report from Dr. O'Leary did not constitute a procedural due process violation. Accordingly, the Borough Defendants are entitled to judgment as a matter of law and the present motion for summary judgment will be granted.

*Section 1983*

Section 1983 does not create substantive rights, but rather provides a remedy for the violation of rights created by federal law. *Groman v. Twp. of Manalapan,* 47 F.3d 628, 633 (3d Cir.1995). The statute provides for a cause of action against persons who, acting under color of state law, deprive another individual of any rights, privileges, or immunities secured by the Constitution, *e.g.,* property rights secured by the Fourteenth Amendments.[6] 42 U.S.C. § 1983. In order for a plaintiff to prevail under Section 1983, he must establish two elements: (1) that the

defendants were "state actors,"[7] and (2) that they deprived the plaintiff of a federal right.[8] See *Groman,* 47 F.3d at 633.

The Supreme Court's stance in *Roth* leads to the conclusion that Pennsylvania law determines whether a property right exists in this case.[9] Accordingly, the Court will examine the applicable statutes to determine if they operate-under the factual scenario present in this case-to grant a protected property right in receipt of pension and retirement benefits to Plaintiff.

*Examination of the Applicable Pennsylvania Statutes*

The Pennsylvania Heart and Lung Act ("the Act"), 53 P.S. §§ 637-638, provides for full salary and fringe benefit compensation of police officers injured in the performance of their duties. It provides compensation only for persons who are temporarily incapacitated, and does not apply where a disability is total or permanent. *Camaione v. Borough of Latrobe,* 567 A.2d 638, 640 (Pa.1989), *cert. denied* 498 U.S. 921. See *Kurtz v. City of Erie,* 133 A.2d 172, 177 (Pa.1957) ("[w]hile the Act provides for compensation for total disability for a temporary period, it excludes compensation for any disability which is permanent"). See also *Callahan v. Pa. State Police,* 431 A.2d 946, 947 (Pa.1981).

**\*5** This case does not present the situation where a Plaintiff-police officer's Heart and Lung Act benefits were terminated without a hearing, and he is thus challenging the lack of procedural due process afforded to him.[10] Plaintiff instead claims that the Borough Defendants' continued payment of Heart and Lung Act benefits to him after they knew of the permanency of his work restrictions violated his protected property right to receipt of pension and retirement benefits-for which he could have successfully applied at the time of the issuance of Dr. O'Leary's report, but later was disqualified from receiving based on his suspension and termination from the police force for conduct unrelated to his public employment. The Court disagrees, however, with the Plaintiff's argument that there was a legal burden[11] on the Borough Defendants to disclose the results of the IME report opining that Plaintiff had permanent work restrictions such that their failure to disclose such information vested an immediate property right in receipt of retirement and disability pension benefits for which Plaintiff *may or may not* have applied. The Court holds, therefore, that no procedural due process violation occurred because Plaintiff had no legitimate entitlement to the receipt of those pension benefits solely by virtue of the issuance of Dr. O'Leary's report, regardless of Borough Defendant's failure to furnish the contents of same to Plaintiff.[12]

As the Supreme Court stated in *Roth,* to have a protected property interest in a benefit, a person must have more than an abstract need or desire for it, and more than a unilateral expectation of it; he must have a legitimate claim of entitlement to that benefit. 408 U.S. at 577. Under Pennsylvania law, in order to be eligible for receipt of police disability pension benefits, an officer must first receive an honorable discharge by reason of age and service, or disability. 53 P.S. § 767(a)(2). Plaintiff here did not receive an honorable discharge from the Borough police force; he was suspended and terminated pursuant to the Pennsylvania Borough Code for violations of Pennsylvania law and for conduct unbecoming an officer.[13] Subsequently, the Borough lawfully terminated Plaintiff's Heart and Lung Act benefits without affording him a hearing.[14]

Plaintiff argues that if not for the Borough Defendants' non-disclosure of the contents of Dr. O'Leary's report, he would have applied for retirement benefits at the time of the report's issuance. As a result, Plaintiff contends, he would have received an honorable discharge at that time, entitling him to receive his disability pension and retirement benefits, the continued receipt of which would have been unaffected by his later suspension and termination for charges unrelated to his position as a police officer.[15]

Plaintiff did not apply for disability pension benefits until after his suspension from the police force. Borough Defendants argue that if Plaintiff wished to voluntarily terminate his Heart and Lung benefits, and apply for disability retirement, he could have done so at any time prior to his suspension from duty.[16] They further argue that Plaintiff did not voluntarily terminate his benefits under the Heart and Lung Act because he was receiving full wages and fringe benefits while being covered under the Act, whereas the disability pension plan would have afforded Plaintiff only 50% of his salary. Therefore, Borough Defendants argue, Plaintiff had an obvious economic interest in not applying for retirement benefits and remaining covered under the Act for as long as possible, and would not have applied for retirement benefits even if he had actual knowledge that his disability was considered permanent. Plaintiff argues, in response, that he did not seek coverage under the disability retirement plan until after he was suspended from duty because he had no indication that he had been deemed permanently disabled before that time.

**\*6** Though this dispute represents an issue of fact, the Court finds that the resolution of this issue is not material to deciding the instant motion. Plaintiff had no legitimate entitlement to the receipt of pension benefits solely by virtue of the issuance of Dr. O'Leary's report, regardless of Borough Defendant's failure to furnish the contents of same to Plaintiff. The Court can identify no support for the argument that there was a legal duty on the part of the Borough Defendants to provide the contents of the IME report to Plaintiff, such that their failure to do so denied Plaintiff a property right protected by the due process clause. Indeed, Plaintiff deprived himself of any pension by virtue of having engaged in conduct which resulted in his termination and thereby disqualified him from receiving a pension.

Therefore, Borough Defendants' motion for summary judgment will be granted.

**CONCLUSION**

After reviewing all pertinent evidence from the record, the Court is of the opinion that no genuine issue of material fact exists as to any of the issues present in this case, and that the Borough Defendants are entitled to judgment as a matter of law. Therefore, summary judgment pursuant to Federal Rule of Civil Procedure 56(c) will be granted.

An appropriate Order will follow.

**ORDER**

**NOW,** this *27th* day of December, 2006, **IT IS HEREBY ORDERED** that Defendants Borough of Shenandoah, Joseph Palubinsky, John P. Thomas, the Borough Council of Shenandoah, and Joseph B. Lawson's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 is **GRANTED.**

**All Citations**

Not Reported in F.Supp.2d, 2006 WL 3814311

Footnotes

1     The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C.A. § 1331 (1980).

2     The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person ... (3)[t]o redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens.... (1979).

3     On or about February 27, 2002, Plaintiff was accepted into the Accelerated Rehabilitative Disposition (ARD) program with respect to the criminal charges against him. While not representing an admission of guilt, Plaintiff was required to serve 12 months probation and was required to pay a monthly supervision fee and a fine. (Doc. 42-6 ¶¶ 23-24.)

4     Originally codifed at P.L. 477 §§ 1-2 (as amended 53 P.S. §§ 637-638) (allowing police and fire personnel to collect full salary benefits for temporary injuries sustained in the performance of their duties).

5     These same Defendants filed a motion for summary judgment pursuant to Fed.R.Civ.P. 41(b) on March 13, 2006 (Doc. 47) for Plaintiff's failure to file a brief in opposition to the summary judgment motion presently before the Court. The Court denied this Rule 41(b) motion in the order dated August 16, 2006. (Doc. 56.) Plaintiff subsequently filed a brief in opposition (Doc. 59) to the

present motion.

6     The Fourteenth Amendment to the United States Constitution forbids a state from depriving a person of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1.

7     The parties do not dispute that the Borough Defendants are state actors.

8     The United States Supreme Court has held that property interests created by state law are protected by the Due Process Clause of the Fourteenth Amendment. *See Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 577 (1972). The Court said "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* at 577. The Court added that "[p]roperty interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.*

9     A long line of Pennsylvania cases state that an employee's relationship with a government entity and its retirement system is contractual in nature. *See, e.g., Dombrowski v. Phila.,* 245 A.2d 238 (Pa.1968); *Hickey v. Pittsburgh Pension Bd.,* 106 A.2d 233 (Pa.1954). "At the time retirement pay becomes a vested right ... it has ripened into a full contractual obligation." *McBride v. Allegheny County Ret. Bd.,* 199 A. 130, 131 (Pa.1938).

10    An injured police officer receiving Heart and Lung Act benefits has a constitutionally protected property right in those benefits. *Adams v. Lawrence Twp. Bd. of Supervisors,* 621 A.2d 1119, 1120 (Pa.Commw.Ct.), *petition for allowance of appeal denied,* 637 A.2d 291 (Pa.1993); *Callahan,* 431 A.2d at 947. Once it is determined that a police officer qualifies for benefits under the Act, his disability status cannot be changed from temporary to permanent unless a due process hearing is afforded. *Camaione,* 567 A.2d at 640. *See also Cunningham v. Pa. State Police,* 507 A.2d 40 (Pa.1986). Heart and Lung Act benefits may not be terminated without conducting a full due process hearing in which the employer establishes one of two bases of termination: (1) claimant is able to return to work because their disability has ceased, or (2) claimant's disability is permanent as opposed to only temporary. *Gwinn v. Pa. State Police,* 668 A.2d 611, 613 (Pa. Com mw. Ct.1995), *petition for allowance of appeal denied,* 679 A.2d 231 (Pa.1996); *Williams v. Dep't of Corr.,* 642 A.2d 608, 610 (Pa.Commw.Ct.1994). The employer has the burden to show by "substantial evidence a 'reasonable inference' that the [employee's] disability is of lasting or indefinite duration[,]" in order to establish that the disability is permanent, for purposes of terminating benefits under the Heart and Lung Act. *Cunningham,* 507 A.2d at 45.

11    At the time Dr. O'Leary's report was issued, no litigation was ongoing or anticipated between Plaintiff and the Borough with respect to Plaintiff's right to receipt of any benefits; thus, Dr. O'Leary's medical opinion was not given with the intent of offering this opinion at any trial and Borough Defendants were not required to furnish the report's contents to Plaintiff pursuant to Fed.R.Civ.P. 35.

12    This Court has held previously in this action that a pension benefit, whether vested or unvested, does not constitute property entitled to substantive due process protection in the Third Circuit. Therefore, Plaintiff's substantive due process claim under § 1983 was dismissed. (Doc. 31 p. 9.; Doc. 32 p. 9.)

| | |
|---|---|
| 13 | The applicable section of the Borough Code, codified at 53 P.S. § 46190, reads, in pertinent part: "No person employed in any police ... force of any borough shall be suspended [or] removed ... except for the following reasons: (3) Violation of any law which provided that such violation constitutes a misdemeanor or felony. (4) Inefficiency, neglect, intemperance, immorality, disobedience of orders, or conduct unbecoming an officer." |
| 14 | Where a police officer's termination from employment for conduct unbecoming an officer disqualifies him from receiving Heart and Lung Act benefits, no due process hearing is required prior to terminating such benefits. *City of Pittsburgh v. W.C.A.B. (Williams),* 810 A.2d 760, 762 (Pa.Commw.Ct.2002) (citing *Camaione,* 567 A.2d at 641). A claimant in such a situation is entitled to receive workers' compensation benefits following removal from the Heart and Lung Act eligibility group. *Id.* at 763. |
| 15 | On July 8, 1978, the Pennsylvania Legislature enacted the Public Employees' Pension Forfeiture Act ("the PEPFA"). The PEPFA provides for the forfeiture of pension benefits received by a retired state employee if the employee is convicted or pleads guilty or no defense to a crime related to public office or public employment. Though one could argue otherwise, it is likely that Plaintiff's indictments for violations of 18 P.S. § 3927 pertaining to 'Theft by Failure to Make Required Disposition of Funds Received'-for failing to properly and timely forward money to PennDOT in connection with vehicle title transfers that he had processed-is misconduct unrelated to his public employment as a police officer. Under this reasoning, these indictments would not serve to disqualify Plaintiff from receiving pension benefits by operation of the PEPFA. |
| 16 | An employee may voluntarily agree to the termination of Heart and Lung Act benefits, and likewise may waive his or her right to a due process hearing on the termination of those benefits. *Adams,* 621 A.2d at 1121. |

---

End of Document © 2023 Thomson Reuters. No claim to original U.S. Government Works.